Nelms *et al. vs.* Summers.

----

THOMAS NELMS *et al.*, plaintiffs in error, *vs.* JOHN W. B. SUMMERS, ordinary, for use, etc., defendant in error.

Where, on the 7th of March, 1864, Nelms, as guardian, received $1,420 00 in Confederate money, and had never had the property of his ward in any other form, and on the same day applied to the judge of the superior court for direction in what manner to invest it, and was directed to invest in Confederate securities, and he did so invest in four per cent. Confederate bonds and in interest-bearing Confederate treasury notes, and exhibited the same on trial:

*Held*, that Nelms and his securities on the guardian's bond are fully protected, and there can be no recovery against them.

Guardian and ward. Trustees. Confederate money. Before Judge HALL. Rockdale Superior Court. May Term, 1875.

Reported in the opinion.

CLARK & PACE, for plaintiffs in error.

No appearance for defendant.

JACKSON, Judge.

Summers, the ordinary of the county of Rockdale, suing for the use of certain wards, brought an action against Nelms and his sureties on a guardian's bond. It appears from the record that Nelms received certain Confederate money on the 7th of March, 1864; that he never had any property or other money of his ward's in his hands; that on the same day that he received the Confederate notes, he applied, under the acts of the general assembly of 1861 and 1863, to the judge of the superior court for direction as to the manner in which he should invest, and that said judge directed him to invest in Confederate securities, and that he did so, and produced them on the trial. The court held that he was not protected. We think that he was protected. The acts of 1861 and 1863 fully authorized the application, the direction of the court, and the investment: See acts of 1861, page 32; and acts of 1863 and 1864, page 29. These acts are not in conflict with the constitution of Georgia, for they were affirmed by the convention which framed that instrument, and the decision and judgment of our courts are protected in the instrument itself, and declared to be valid and binding: Code, section 5147. Are they in conflict with the constitution of the United States? We think not. They were passed, it is true, during the war between the Confederate and the United States, but their passage was in no sense a war measure, nor in aid of it. They were enacted to protect wards and minors in their estates, at a time when everything was uncertain, and all securities were doubtful. They were enacted to relieve trustees from embarrassment, and to throw around them judicial protection. The acts in question were to regulate the intercourse between our own citizens, at a time when the constitution and laws of the United States were without practi-

cal force in the state, and all had to yield to the *vis major,* the then dominant power in the state. These acts were not made with the intention and for the purpose of aiding in the war against the United States, but to regulate our own domestic relations and duties among our own citizens in the domestic relation of guardian and ward, as to the case at bar, and they come within the principle decided in *Miller vs. Gould,* 38 *Georgia,* 465. We are aware of the decision pronounced by the supreme court of the United States in Horn *vs.* Lockhart, in 17th Wallace, 570; but that judgment was pronounced upon an Alabama statute, was made on appeal from the circuit court of the United States, and is expressly confined to the courts of the United States. We are not aware of any mode by which a case between guardian and ward, all citizens of Georgia, under the state statutes, can be supervised by the courts of the United States. If those courts get jurisdiction on the ground of one of the parties being a non-resident, then, indeed, those courts can adjudicate the question, and the case in the last resort may go to the supreme court of the United States in cases where an appeal may lie. And such was the Alabama case. Besides, that was a case where the executor was possessed of the estate in 1858 in good property, and where he might have invested otherwise, or divided the estate, with proper diligence, before the war or in its earlier stages. This is a case where the wards couldy have received no injury. The property, and the only property the guardian received, was Confederate money. Had he kept it, it would have been lost; had he invested in negroes, they proved valueless; to whom should he or could he lend it, so as to make it secure? It were well nigh impossible; he pursued a prudent course, and lost no time in doing so; he followed the law of his state strictly, and we think that the courts of his state should protect him.

Judgment reversed.